# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                          No. CR 09-1579 JB

VIRGIL PINTO,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed January 29, 2010 (Doc. 29).  The Court held a sentencing hearing on March 1, 2010.  The primary issue is whether the Court should vary from the advisory guideline range for Defendant Virgil Pinto. The Court has concerns about V. Pinto's history and problems with alcohol, the egregiousness of this federal crime, and the unnecessary loss of life and suffering that V. Pinto's criminal history has caused.  Accordingly, the Court will deny Pinto's request for a variance.

## FACTUAL BACKGROUND

On May 6, 2009, in the early morning, V. Pinto was driving his ex-girlfriend to school in Gallup, New Mexico.  Along the way, V. Pinto came across his uncle, Robert Jake, in the streets of Gallup with a female companion, Theresa Ervin.  It appeared to V. Pinto that R. Jake had spent the night sleeping on the streets of Gallup.

Sadly, R. Jake sleeping on the streets was not surprising, because, for some time, R. Jake had been essentially homeless, and V. Pinto had taken him home from the streets on other occasions, offering him food and compassion.  V. Pinto saw his uncle R. Jake once again needed help, so

V. Pinto quickly dropped off his ex-girlfriend, turned around, and came back to take R. Jake off the street. Over the next few hours, V. Pinto took R. Jake to V. Pinto's home, prepared food for him, and spent time with him.

V. Pinto has attached to his sentencing memorandum a letter written by Andy Pinto, V. Pinto's father, describing how R. Jake had fallen out of favor with much of his family and how V. Pinto continually reached out to him with compassion. See Letter from Andy & Virginia Pinto at 1-2 (undated), filed January 29, 2010 (Doc. 29-2). Unfortunately, and quite tragically, R. Jake and V. Pinto shared a similar dependance on alcohol. So, while V. Pinto offered R. Jake compassion and food, he also provided R. Jake with alcohol and spent time drinking with him.

That day in May, their drinking led R. Jake to discuss his relatives who had passed away. Specifically, R. Jake reminisced about his deceased brothers who were buried in Pueblo Pintado, New Mexico. Listening to his uncle discuss his deceased brothers after having found his uncle living on the street, V. Pinto offered to take his uncle to visit his brothers' graves. Another of R. Jake's nephews, Carlos Jake, came along for the ride, as did C. Jake's girlfriend, Katasha Smith.

All of the travelers were consuming alcohol, and they were exceeding the speed limit. That alcohol, combined with the emotional nature of the outing, lead to a heated discussion between C. Jake and R. Jake. Shortly after leaving Thoreau, traveling north on Route 371, toward East Route 9, C. Jake again engaged in a verbal dispute with R. Jake, which V. Pinto -- while driving -- sought to quell. V. Pinto then lost control of the vehicle. The truck rolled several times, ejecting R. Jake, who died from his injuries.

## PROCEDURAL BACKGROUND

V. Pinto entered into a plea agreement wherein he agreed to plead guilty to the charge of Involuntary Manslaughter in violation of 18 U.S.C. §§ 1153 and 1112. See Plea Agreement at 2,

filed October 19, 2009 (Doc. 23).  The United States Probation Office drafted a Presentence Investigation Report ("PSR"), which calculated V. Pinto's total offense level as 19 and his criminal history category as II, resulting in a guideline imprisonment range of 33 to 41 months.  See PSR ¶¶ 30, 35, at 10, 11 (disclosed January 15, 2010).  V. Pinto filed a sentencing memorandum in which he asked the Court to grant him a variance to a sentence below the guideline imprisonment range based on the factors outlined in 18 U.S.C. § 3553(a).  Specifically, V. Pinto requests that the Court vary below the advisory guideline range under 18 U.S.C. § 3553(a)(1) based on Pinto's relationship with the victim and on Pinto's tragically misguided efforts at kindness toward the victim.

On February 8, 2010, the United States filed its response in opposition to V. Pinto's sentencing memorandum.  See Response to Defendant's January 29, 2010 Sentencing Memorandum [Doc. 29], filed February 8, 2010 (Doc. 30).  The United States cannot confirm the facts that Pinto alleges in his sentencing memorandum regarding his upbringing and lifestyle of alcohol dependency.  Rather, it urges the Court to consider the seriousness of the crime and the unnecessary loss of life, and to deny V. Pinto's request for a variance.

## ANALYSIS

The Court has examined closely the facts of this case, the unnecessary loss of life that V. Pinto caused, and the letters that the victims' family submitted.  The Court must impose a sentence that reflects the egregious nature of V. Pinto's conduct.  The sentence should reflect that V. Pinto fled from the scene of the crime, and the loss of life and suffering that his actions have caused.  The sentence must reflect V. Pinto's serious criminal actions and the factors set out in 18 U.S.C. § 3553(a).  V. Pinto's history does not warrant a variance from the guideline sentencing range of 33-41 months.

The offense level is 19 and the criminal history category is II, resulting in a guideline

imprisonment range is 33 to 41 months.  The Court notes V. Pinto drove his vehicle recklessly on an Indian reservation, which caused the vehicle to roll over and subsequently led to J. Jake's death. The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  Specifically, the Court has considered the guideline-imprisonment range established for the applicable category of offense committed by the applicable category of defendant.  The Court has also carefully considered the sentencing memorandum, the victim impact statement, the letters from Andy and Virginia Pinto, as well as the arguments and statements by V. Pinto before the Court.

The Court has spent several days closely reviewing the facts of this case, but ultimately the determining factor for the Court is the unnecessary loss of life that V. Pinto has caused.  The Court sees this fact pattern too frequently.  Such cases, wherein the victim and the defendant have a close relationship, and the victim's and defendant's families are intertwined, are not unfamiliar.  The problem with this case is that the nature of V. Pinto's conduct was so egregious.  The Court must focus on this egregiousness -- V. Pinto's conduct after the crime, at the scene of the crime, the loss of life, the suffering that he has caused -- in balancing the factors that are presented in this case.  He committed very serious criminal acts.   And, while the Court is concerned about V. Pinto's alcoholism, it believes that it can craft a sentence that deals adequately with that alcohol problem without minimizing the seriousness of the crime.

The Court is very understanding of the fact that V. Pinto had a close relationship with the victim and that he may have been the only one in the family that had such a close relationship.  The Court unfortunately sees this pattern -- where girlfriends, family members, or people that are very close to the defendant are killed by the use of alcohol and driving -- very frequently.  In the end, the Court does not believe that those factors counsel for a variance or override the very serious nature

of the offense here.  The Court thus believes that the punishment that is set forth in the guidelines is appropriate for this offense.

The Court has considered the kind of sentences and ranges that the guidelines establish and the Court believes that a sentence at the low end of the guidelines reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and affords adequate deterrence. The guidelines provide a very fair sentence in this situation and the Court selects the low-end of the guideline range.  There will continue to be a need to protect the public, of course, until the Court is truly convinced that V. Pinto has overcome his alcohol problems and is prepared to enter back into society as a productive member.  Because of some of the conditions the Court will place on V. Pinto upon his release, however, the Court finds the total sentence reflects all of the factors embodied in 18 U.S.C. § 3553(a).  While the Court's task as a trial court is not necessarily to come up with a reasonable sentence, but to come up with a sentence that accurately reflects the factors set forth in § 3553(a), the Court believes a sentence of 33 months is reasonable.  Finally, the Court thinks the sentence is sufficient without being greater than is necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act.  The Court will thus deny V. Pinto's request for a variance and sentence him to a term of 33 months in the custody of the Bureau of Prisons.

**IT IS ORDERED** that the Defendant's request for a variance from the advisory guideline range in his Sentencing Memorandum is denied.  Defendant Virgil Pinto is sentenced to a term of 33 months in the custody of the Bureau of Prisons.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
  United States Attorney
Kyle T. Nayback
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

James C. Loonam
  Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorney for the Defendant*